UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MATTHEW J. LARUE and )
SARAH LARUE, )
        Plaintiffs, )
  )     No. 1:12-cv-68
-v- )
  )     HONORABLE PAUL L. MALONEY
MORTGAGE ELECTRONIC REGISTRATION )
SYSTEMS, INC., )
MERSCORP, INC., )
VERICREST FINANCIAL, INC., )
LSF6 SERVICE OPERATIONS, LLC, )
ORLANS ASSOCIATES, P.C., )
BANK OF NEW YORK MELLON, *trustee for* )
     *CIT Mortgage Loan Trust 2007-1*, )
CIT MORTGAGE LOAN TRUST 2007-1, )
ETITLE AGENCY, INC., )
MARSHALL ISAACS, )
UNKNOWN PART(Y)(IES) #1, *other* )
     *individual participants in* )
     *foreclosure of subject Note and* )
     *Mortgage*, )
UNKNOWN PART(Y)(IES) #2, *corporations* )
     *with interest in, or participating in* )
     *any capacity in foreclosure of,* )
     *subject Note and Mortgage*, )
     Defendants. )
_____)

## OPINION AND ORDER OF REMAND

In this case, Plaintiffs Matthew J. LaRue and Sarah LaRue bring claims against various

defendants who were allegedly involved in the foreclosure and sale of the LaRues' home.  The suit

began in the courts of Ottawa County, Michigan, but was quickly removed to federal court, despite

the presence of one non-diverse Defendant: Orlans Associates, P.C.  Plaintiffs have since filed an

Amended Complaint adding both claims and parties—including two other non-diverse Defendants:

Marshall Isaacs, an Orlans attorney; and eTitle Agency, Inc.

Though two motions to dismiss have been briefed and are ripe for decision, this court finds that it lacks the power to do so. Plaintiffs' claims against the non-diverse defendants are not so obviously lacking in merit that the court will refuse to join them in this suit. The Amended Complaint therefore destroys any subject-matter jurisdiction the court may have had over this matter, and pursuant to 28 U.S.C. § 1447(e), the court must remand this suit back to the Circuit Court of Ottawa County.

## I.    BACKGROUND

In May of 2006, Plaintiffs Matthew J. LaRue and Sarah LaRue executed a Note and Mortgage regarding property located at 4710 N. 160th Ave., Holland, Michigan ("the Property"). (Am. Compl., ECF No. 28 ¶¶ 1–2.) The Mortgage changed hands several times over the next few years, but for present purposes, little of consequence occurred until the middle of 2010. Plaintiffs allege that in August of that year, the loan servicer, Defendant Vericrest Financial, Inc., increased the LaRues' monthly payment from $1,191.40 to approximately $1,738.98. (*Id.* ¶ 29.) Vericrest allegedly gave no explanation for this increase, and they failed to satisfactorily answer Plaintiffs' questions about the change. (*Id.*) Plaintiffs therefore continued paying the previous amount for August and September of 2010. (*Id.*)

In November 2010, Vericrest informed Plaintiffs that their mortgage was in default. (*Id.* ¶¶ 30–31; Compl. Ex. I, ECF No. 1-4 at 15.) Plaintiffs wrote back, claiming that Vericrest had failed to apply prior payments to the LaRues' account. (*Id.* ¶ 32; Ex. J.) Plaintiffs claim to have sent two more payments of $1,191.40 with this letter, though the payments are not mentioned in the letter (or shown along with the letter in Plaintiffs' exhibit). Vericrest never acknowledged receipt of the payments. Instead, it claimed that it had not received any payment since late September and asked

Plaintiffs to provide verifying information of any allegedly missing checks.  (*Id.* ¶ 33; Ex. K.)

On January 10, 2011, Plaintiffs sent Vericrest three checks of $1,191.40—two reissued payments and one "for the current payment due" (Ex. L)—and on February 7, they sent another payment.  (Ex. M.)  Vericrest applied none of these payments to the LaRues' account balance, however.

On February 12, 2011, Vericrest sent another notice of default to Plaintiffs.  (*Id.* ¶ 37; Ex. N.)  Plaintiffs responded with a mailing detailing what it considered to be numerous breaches of the mortgage agreement.  (*Id.* ¶ 38.)  Plaintiffs then stopped payment on the undeposited checks.  (*Id.* ¶ 39.)

On April 15, 2011, Defendant Orlans mailed Mr. LaRue a notice that they had been hired to start foreclosure proceedings. (*Id.* ¶ 40; Ex. P.)  Plaintiffs again responded with a letter detailing alleged legal deficiencies in Defendants' actions.  (*Id.* ¶ 43; Ex. Q.)  On May 3, Vericrest informed Plaintiffs that it had considered their arguments and found them to be "without merit." (*Id.* ¶ 44; Ex. S.)  Two weeks later, Vericrest sent Plaintiffs a letter purporting to provide further evidence of their debt obligation.  (*Id.* ¶ 47.)

Around the same time, the Mortgage changed hands again.  On April 22, 2011, MERS assigned the Mortgage to Defendant Bank of New York Mellon, as trustee of Defendant CIT Mortgage Loan Trust 2007-1.  (*Id.* ¶ 42.)  The assignment was recorded on April 28.  (*Id.*)

Meanwhile, Orlans went ahead with the foreclosure.  On May 16, 2011, they submitted a notice of foreclosure by advertisement to the local newspaper.  (*Id.* ¶ 46.)  On May 23, an Ottawa County Special Deputy posted a notice of foreclosure on Plaintiffs' door.  (*Id.* ¶ 48.)  Despite Plaintiffs' protests, the sheriff's sale went ahead on June 30, 2011, with Defendant Bank of New

York Mellon purchasing the property as trustee of the CIT Mortgage Loan Trust 2007-1.  (*Id.* ¶¶ 51–52.)

On December 13, 2011, Plaintiffs asked Orlans to compute the property's redemption amount.  (*Id.* ¶ 54.)  They never received any such computation (*id.* ¶ 55), and Plaintiffs never attempted to redeem the property.  The redemption period ended on December 30, 2011.

On January 3, 2012, the LaRues filed suit in the Ottawa County Circuit Court of Michigan against a number of different Defendants, including Vericrest and Orlans.  (ECF No. 1-3.)  Defendants timely removed the case to this court.  (ECF No. 1.)  After Plaintiffs filed an amended complaint (ECF No. 28), Defendants moved to dismiss.  (ECF Nos. 29, 34.)  Plaintiff filed a joint response to the motions (ECF No. 40), and Defendants filed briefs in reply (ECF Nos. 44, 49).

## II.   ANALYSIS

Defendants removed this case from the Michigan courts based on a claim of diversity jurisdiction.  Diversity actions must be founded on complete diversity of citizenship—that is, no defendant can be a citizen of the same state as any plaintiff.  *See Lincoln Prop. Co. v. Roche*, 546 U.S. 81, 89 (2005).  According to the original Complaint, however, both Plaintiffs and Defendant Orlans are citizens of Michigan.  Normally, this would defeat subject-matter jurisdiction and require remand.  Only if Orlans was fraudulently joined would the court have jurisdiction over this case.

Similarly, when Plaintiffs filed their Amended Complaint, they added two more Michigan citizens: Defendant eTitle and Defendant Isaacs.  Under 28 U.S.C. § 1447(e), the court must either deny this attempted joinder or else permit the joinder and remand the action to state court.

The court will apply the same standard to both questions.  If these three Michigan-based defendants have been fraudulently joined, the court will dismiss Orlans and deny joinder of eTitle

and Mr. Isaacs. Otherwise, at least one of these Defendants will remain in the case, and the court will remand the matter to the state courts. Under the doctrine of fraudulent joinder, a non-diverse party is excluded from the diversity analysis where the plaintiff has no colorable cause of action against that party under state law. *See Jerome-Duncan, Inc. v. Auto-By-Tel, L.L.C.*, 176 F.3d 904, 907 (6th Cir. 1999). As the removing parties, Defendants bear the burden of demonstrating fraudulent joinder, and the court will resolve all disputed questions of fact and ambiguities in state law in favor of the nonremoving party. *Alexander v. Elec. Data Sys. Corp.*, 13 F.3d 940, 948–49 (6th Cir. 1994).

### A. Count I – Foreclosure *Void Ab Initio*

Four of Plaintiffs' claims apply to one or more of these Defendants. First, Plaintiffs allege that the foreclosure was *void ab initio* (Part IV of the Amended Complaint). They claim that Orlans issued a notice of default and otherwise took steps to effectuate the foreclosure. This claim fails. Orlans undisputedly did not and does not have any interest in the mortgage or the property that would make it a proper subject of this claim. Orlans has no stake in whether the foreclosure was or was not void. It is therefore not a proper defendant under this claim.

### B. Count II – Fraud

Count II (Part V of the Amended Complaint) claims that each Defendant committed fraud in effectuating the foreclosure. But as Defendants note, allegations of fraud are subject to a heightened pleading standard under Rule 9(b). Such claims must be pleaded "with particularity"—that is, they must "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Frank v. Dana Corp.*, 547 F.3d 564, 570 (6th Cir.

2008) (internal quotation marks omitted). "To satisfy Rule 9(b), a complaint of fraud, at a minimum, must allege the time, place, and content of the alleged misrepresentation on which [the plaintiff] relied; the fraudulent scheme; the fraudulent intent of the defendants; and the injury resulting from the fraud." *U.S. ex rel. Marlar v. BWXT Y-12, L.L.C.*, 525 F.3d 439, 444 (6th Cir. 2008) (internal quotation marks omitted; alteration in original). Plaintiffs fail to meet this standard, at least regarding the three Michigan-based defendants. Though they allege that Defendants made fraudulent statements in order to foreclose on Plaintiffs' home, they fail to identify any such statements in particular. Indeed, the factual allegations do not refer to Defendants Isaacs or eTitle at all, and their only allegations against Defendant Orlans state that Orlans mailed them various notices of default and failed to respond to certain letters sent by Plaintiffs. These allegations wholly fail to identify which of these statements were fraudulent and why, as is required to satisfy Rule 9(b). Under the facts alleged, the court sees no colorable claim of fraud against these three defendants.

### C.    Count V – Intentional Infliction of Emotional Distress / Loss of Consortium

Next, Plaintiffs name Defendants Orlans and Isaacs in count V (Amended Complaint Part VIII), claiming intentional infliction of emotional distress and loss of consortium. This claim is also based in allegations of fraud, however. Plaintiffs argue that defendants acted "in the course of executing a fraudulent foreclosure by advertisement, which was knowingly based upon a series of false material misrepesentation(s)." Because the claim is based on alleged fraudulent conduct, Rule 9(b) applies here as well. *See, e.g.*, Charles Alan Wright et al., 5A Federal Practice and Procedure § 1297 ("Even when a plaintiff is not making a fraud claim, courts will require particularity in the pleading if the cause of action is premised on fraudulent conduct."); *cf. Haase v. GunnAllen Fin.,*

*Inc.*, No. 08-10927, 2011 WL 768045 (E.D. Mich. Feb. 28, 2011) ("Here, because the Plaintiffs' underlying allegations . . . are rooted entirely in fraud, the Court finds that the heightened pleading standards of Rule 9(b) apply.") (citing *Indiana State Dist. Council of Laborers and Hod Carriers Pension and Welfare Fund v. Omnicare, Inc.*, 583 F.3d 935, 948 (6th Cir. 2009)). Plaintiffs' allegations here add no specificity to their earlier claims, and so this count fails for the same reasons as Count II.

### D.     Count VI – Defamation and Libel

Finally, in Part IX of their Amended Complaint, Plaintiffs bring claims of defamation *per se* and libel against all Defendants. Under Michigan law, a defamation or libel claim requires

> (1) a false and defamatory statement concerning the plaintiff, (2) an unprivileged communication to a third party, (3) fault amounting at least to negligence on the part of the publisher, and (4) either actionability of the statement irrespective of special harm (defamation per se) or the existence of special harm caused by publication

*Mitan v. Campbell*, 706 N.W.2d 420, 421 (Mich. 2005).

Defendants argue that these claims are insufficiently pleaded, citing in support Michigan case law holding that defamation and libel claims must be pleaded with specificity. *See Royal Palace Homes, Inc. v. Channel 7 of Detroit*, 495 N.W.2d 392, 394 (Mich. Ct. App. 1992). But Michigan law no longer applies to these claims. Instead, the Federal Rules of Civil Procedure set out the pleading standards applicable to federal cases. Defamation and libel are not claims that must be pleaded with particularity under Rule 9(b), and so the liberal pleading standard of Rule 8 applies to these allegations—with one exception, discussed below. *See, e.g.*, *Shady Grove Orthopedic Assoc., P.A. v. Allstate Ins. Co.*, —— U.S. ——, 130 S.Ct. 1431, 1448 (2010) (confirming the "long-recognized principle that federal courts sitting in diversity 'apply state substantive law and

federal procedural law'").

To satisfy Rule 8, a plaintiff must plead only "sufficient factual matter, [when] accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plaintiffs' Amended Complaint appears to meet this standard. They allege that Defendants intentionally and knowingly published false statements through the process of foreclosure by advertisement, and that this publication caused Plaintiffs actual damages. Though these allegations do not point out the exact statements that are claimed to have been defamatory, Rule 8 does not require such specificity. Plaintiffs clearly state their position that they were not in breach of the Mortgage or Note, and their claim is limited to documents published as part of the process of foreclosure. These allegations put clear boundaries on the scope of Plaintiffs' claim and give Defendants adequate notice of their allegedly offending actions.

One aspect of Plaintiffs' claim is subject to a stricter standard, however. Under Rule 9(g), items of "special damage" must be specifically pleaded. Fed. R. Civ. P. 9(g). Defamation and libel claims, at least under Michigan law, require such special damages except in cases of defamation *per se*. *See Mitan*, 706 N.W.2d at 421. Despite Plaintiffs' allegations to the contrary, this is not a case of defamation *per se*. Under Michigan statute, defamation *per se* only applies to cases where a person's chastity is impugned or to defamatory claims that a person has committed a crime. Mich. Comp. Laws § 600.2911. Plaintiffs cite no case law extending the doctrine to the claims at issue here. Thus, in order to state a claim here, Plaintiffs must plead with particularity their special damages.

In their Amended Complaint, Plaintiffs claim actual damages and assert that "[a]ny

reasonable determination is that" Defendants' alleged defamatory statements "would cause harm to Plaintiffs within their community, to employers, future relationships, and business dealing, and to credit reporting agencies."  Though these allegations are less than fully clear, they could reasonably be read to state that Plaintiffs have actually suffered the listed harms and that an objective observer would have foreseen such injuries.  Rule 9(g) is meant to ensure that Defendants are promptly informed as to the nature of the damages claimed against them.  It does not require a full accounting of those damages in the plaintiff's initial pleading.  *See* Charles Alan Wright et al., 5A Federal Practice and Procedure § 1310.  The court must read *pro se* pleadings liberally, and merely ambiguous allegations should not doom Plaintiffs' claim at this stage in the proceedings.  Indeed, these allegations are not far removed from those found sufficient by the Supreme Court of Michigan in *Couch v. Mining Journal Co.*:

> The declaration averred that the plaintiff 'suffered the loss in his profession of the confidence of his neighbors, friends, clients, and acquaintances, and had otherwise been greatly injured, to wit,' etc., 'to the damage of plaintiff ten thousand dollars.'  We think this was sufficient to apprise the defendant of a claim for damages for loss to business.

89 N.W. 936, 937 (Mich. 1902).  As in *Couch*, the LaRues' allegations are specific enough to apprise Defendants of their claimed damages.  They have therefore satisfied Rule 9(g).

　　　　Finally, Defendants argue that this claim fails because Plaintiffs cannot establish that any of Defendants' statements were false.  But Defendants cannot establish this based on Plaintiffs' pleadings.  Instead, they attach to their motion to dismiss a document purporting to be a record of Plaintiffs' mortgage payments, which supposedly shows that Plaintiffs had been late on their payments long before the allegedly improper events leading to this suit.  But this record was not referenced in the pleadings, and it is not a public record that the court may consider as part of a

motion to dismiss. *Commercial Money Ctr., Inc. v. Ill. Union Ins. Co.*, 508 F.3d 327, 335–36 (6th Cir. 2007). The court must therefore exclude Defendants' Exhibit 1 pursuant to Rule 12(d).

**III.    CONCLUSION**

Because Defendants have failed to show that Plaintiffs state no colorable cause of action against Defendants Orlans, Isaac, or eTitle, the court cannot say that these Defendants were fraudulently joined and will therefore permit the Amended Complaint. The joinder of these Defendants destroys complete diversity and thus this court's subject-matter jurisdiction. The court must therefore remand this matter to the Ottawa County Circuit Court.


**ORDER**

For the reasons provided above, therefore, this action is **REMANDED** to the Circuit Court of Ottawa County, Michigan.

**IT IS SO ORDERED.**

Date:   September 6, 2012                          /s/ Paul L. Maloney
                                                   Paul L. Maloney
                                                   Chief United States District Judge